UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT W. COOK,

      Plaintiff,

v.                                        Case No: 8:16-cv-819-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

## <u>ORDER</u>

Plaintiff, Robert W. Cook, seeks judicial review of the denial of his claims for a period of disability, disability insurance benefits, and supplemental security insurance. As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the decision is affirmed.

## BACKGROUND

### A.    Procedural Background

Plaintiff filed an application for a period of disability, disability insurance benefits, and supplemental security income on June 16, 2009. (Tr. 284.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 84–87, 120–134.) Plaintiff then requested an administrative hearing. (Tr. 135.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 1394–1430.) The ALJ denied Plaintiff's claim. (Tr. 96–113.) The Appeals Counsel granted a request for review by Plaintiff, and Plaintiff had a supplemental hearing. (Tr. 41–83, 114–118.) Following the supplemental hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for

benefits. (Tr. 14–33.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–4.) Plaintiff then timely filed a complaint with this Court. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**B.      Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1978, claimed disability beginning on April 14, 2009, and later amended the alleged disability onset date to June 7, 2009. (Tr. 254–259, 284, 1398.) Plaintiff has a high school education. (Tr. 1397.) Plaintiff's past relevant work experience included work as a sales delivery supervisor, telemarketer, and assistant manager. (Tr. 31, 73–74.) Plaintiff alleged disability due to Crohn's disease, nerve damage to the left hand, bipolar disorder, post-traumatic stress disorder ("PTSD"), osteopenia of the spine, worn out patella femoral groove, reflex sympathetic dystrophy, suicidal thoughts, and depression. (Tr. 289.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since April 14, 2009. (Tr. 17.) After conducting a hearing and reviewing the evidence of record, the ALJ determined that Plaintiff had the following severe impairments: disorders of the spine, history of right foot heel spurs, neuroma, history of right knee trauma, Crohn's disease, bipolar disorder, PTSD, borderline personality traits, polysubstance abuse in full-sustained remission, and obesity. (Tr. 17.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18.) The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work, except he has the frequent ability for postural activities of climbing ladders, ropes, scaffolds, stairs, and ramps as well as crouching, crawling, and stooping. (Tr. 20.) The ALJ further found that Plaintiff can understand, carryout, and remember simple instructions that

do not involve assembly line pace or production quota with only occasional interaction with the general public (but not face to face), coworkers, and supervisors.  (Tr. 20–21.)  In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not fully credible.  (Tr. 23.)

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined that Plaintiff could not perform his past relevant work.  (Tr. 31.)  Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a mail clerk, office helper, or bagger in the laundry/garment industry.  (Tr. 32.)  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled.  (Tr. 33.)

## APPLICABLE STANDARDS

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential

evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, re-weigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239

(11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ's findings in the RFC assessment were not supported by substantial evidence; (2) the ALJ erred in evaluating the opinion evidence; (3) the ALJ failed to fully develop the record; and (4) the ALJ erred in her reliance on the VE's testimony. For the reasons that follow, none of these contentions warrant reversal.

### A.     The ALJ's RFC Assessment

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv). The RFC is defined as the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical, mental, or environmental limitations caused by the claimant's impairments and related symptoms. *Id.* § 404.1545(a)(1), (3). The ALJ will consider the limiting effects of all the claimant's impairments, even those that are not severe, in determining the RFC. *Id.* § 404.1545(e). Ultimately, the ALJ's RFC assessment need not be identical to a particular assessment of record or incorporate precise limitations set forth by a physician. *See id.* § 404.1545(a)(3) (stating that all of the record evidence is considered in the

RFC assessment). The final responsibility for deciding the RFC is reserved for the Commissioner. *Id.* § 404.1527(d)(2).

Here, the ALJ concluded that Plaintiff has the RFC to perform light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, and the ability to walk, stand, sit, push, and pull. 20 C.F.R. § 404.1567(b). As noted above, the ALJ provided additional limitations to Plaintiff's RFC, finding that he has the frequent ability to climb ladders, ropes, scaffolds, stairs, and ramps as well as crouch, crawl, and stoop. (Tr. 20.) The ALJ further found that Plaintiff can understand, carryout, and remember simple instructions that do not involve assembly line pace or production quota with only occasional interaction with the general public (but not face to face), coworkers, and supervisors. (Tr. 20–21.)

### 1. *Plaintiff's Knee Brace*

Plaintiff first contends that the ALJ erred in her assessment of Plaintiff's right knee brace. Specifically, Plaintiff claims that the ALJ failed to review the entire record and therefore failed to properly assess Plaintiff's RFC and his need for a knee brace. (Dkt. 19 at 7–8.) Plaintiff argues that the ALJ incorrectly stated that the record does not reflect that Plaintiff was prescribed a knee brace. (Dkt. 19 at 7.) Plaintiff relies on an October 7, 2009, medical record from Bay Pines Veteran's Administration Medical Center ("V.A. Hospital") noting that Plaintiff was fitted and issued a right knee brace and a November 4, 2009, record noting that Plaintiff was issued an undersleeve to use under the brace. (Tr. 1193, 1213.)

In her decision, the ALJ noted that despite Plaintiff's testimony that he needs to wear two knee braces, "the treatment record fails to show a medical source prescribing the use of a brace and treatment notes suggest the claimant is more active during the day than described during

testimony." (Tr. 21.) As the Commissioner argues, this statement, even if erroneous, is harmless as substantial evidence supports the ALJ's assessment that Plaintiff's knee impairment does not prevent his ability to perform light work. For example, on September 15, 2009, Plaintiff had full flexion-extension without reproducible pain in his right knee. (Tr. 767.) In October 2009, an MRI of Plaintiff's knee was unremarkable aside from a small joint effusion and his ability to walk heel to toe was unimpaired. (Tr. 827, 1201.) On August 22, 2011, Plaintiff denied joint pain and difficulty ambulating and was noted as able to move all extremities without difficulties. (Tr. 924–926.) On June 25, 2013, Plaintiff "ambulated fine," without any report of knee pain. (Tr. 1302.)

Further, Plaintiff's employment history provides additional evidence of Plaintiff's ability to perform light work. On September 29, 2009, Plaintiff reported that he was working as the kitchen supervisor at the shelter where he resided. (Tr. 25, 1216.) Moreover, Plaintiff returned to construction work at a pallet yard for several months in 2010, lifting up to 50 pounds, hauling and tearing down wood products, and working approximately eight to ten hours per day, five to six days per week. (Tr. 26, 618, 709, 716, 1184, 1398–1400.) He eventually quit his construction job because of pay cuts, a reason unrelated to his alleged physical impairments. (Tr. 618.) Thus, any error in the ALJ's statement that Plaintiff was not prescribed a knee brace is harmless and does not warrant remand as there is substantial evidence to support the ALJ's RFC assessment regarding Plaintiff's alleged knee impairment. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding ALJ error harmless where the error did not affect the decision).

### 2. *Plaintiff's Left Wrist*

Plaintiff next argues that the ALJ erred in finding that Plaintiff does not have a severe impairment in his left wrist and by not providing limitations for Plaintiff's left wrist in the RFC assessment. (Dkt. 19 at 10.) Specifically, Plaintiff argues that his RFC should reflect his

limitations in lifting, carrying, handling, fingering, feeling, and fine manipulation with his left wrist and hand. (Dkt. 19 at 10.) In response, the Commissioner argues that substantial evidence supports the ALJ's RFC finding with regard to Plaintiff's left wrist impairment. (Dkt. 20 at 8.)

In her decision, the ALJ first found that Plaintiff's left wrist does not constitute a severe impairment as the record does not show functional limitations and Plaintiff's testimony did not mention the impairment as disabling or limiting. (Tr. 18.) The ALJ then evaluated Plaintiff's left wrist in the RFC assessment, finding no limitations in Plaintiff's ability to use his left wrist. (Tr. 24–26.)

Upon review of the evidence, the ALJ's RFC finding is supported by substantial evidence. As noted by the ALJ, in June 2009, Plaintiff was treated for a suicide attempt involving a self-inflicted knife wound to the left wrist that required surgical repair. (Tr. 24.) Later that month, Plaintiff reported a return of sensation to his left hand. (Tr. 24, 508.) In September 2009, Plaintiff reported numbness in his left wrist but was able to grasp. (Tr. 24, 428.) In October 2009, Plaintiff underwent a left wrist exploration at the V.A. Hospital for median nerve repair, reporting numbness and pain. (Tr. 1209.) The record indicates that Plaintiff tolerated his wrist treatment well. (Tr. 1198.) In November 2009, the record further indicates that Plaintiff missed appointments for treatment, leading the hospital to plan to discharge him if he did not reschedule. (Tr. 25, 1192–1193.) In June 2010, Plaintiff was able to move all extremities and exhibited equal ability to grasp in his left and right hands. (Tr. 1158.) As discussed above, Plaintiff was able to work in construction for several months in 2010. (Tr. 26, 618, 709, 716, 1184, 1398–1400.) Further, the record reflects that Plaintiff had a gap in his treatment for his wrist from March 2010 through October 2013, despite his physician's attempts to contact him. (Tr. 1184, 1381.) Plaintiff argues that this gap can be explained because he had "more pressing medical issues that took

precedence for treatment." (Dkt. 19 at 10.) However, Plaintiff offers no evidence to support this statement.

Additionally, to the extent that Plaintiff points to other evidence which would undermine the ALJ's RFC determination, his contentions misinterpret the narrowly circumscribed nature of the court's appellate review, which precludes us from "re-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner]…even if the evidence preponderates against" the decision. *Moore*, *v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005) (quoting *Bloodsworth,* 703 F.2d at 1239). This court may not reweigh the evidence and decide facts anew and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence may preponderate against it. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

### 3. *Plaintiff's Crohn's Disease*

Plaintiff further argues that the ALJ failed to properly consider and weigh his Crohn's disease as the substantial evidence supports that Plaintiff suffered a long history of Crohn's disease. (Dkt. 19 at 11.) Plaintiff argues that the record reveals Plaintiff's history of Crohn's disease, including symptoms of chronic diarrhea, vomiting, and abdominal pain. (Tr. 1156–1162, 1169–1171, 1233, 1362, 1387.) Plaintiff argues that his Crohn's disease "brings to question" Plaintiff's ability to complete a normal workday without breaks. (Dkt. 19 at 11.)

In analyzing Plaintiff's Crohn's disease, the ALJ first noted that Plaintiff's symptoms appeared to be controlled with medication. (Tr. 19.) Specifically, the ALJ stated that in June 2009, Plaintiff received treatment for Crohn's disease and reported abdominal pain. (Tr. 24, 579.) In May 2010, Plaintiff reported that his Crohn's disease appeared "marginally managed" and that he continued to be employed. (Tr. 25–26, 712.) The record further indicates that Plaintiff's Crohn's disease responded well to medication. (Tr. 700.) In June 2010, Plaintiff reported that he

had not missed a day of work despite his Crohn's disease. (Tr. 1174.) In December 2013, Plaintiff repeatedly denied any gastrointestinal symptoms. (Tr. 1265, 1274.) Therefore, the ALJ's findings regarding Plaintiff's Crohn's disease are supported by substantial evidence. *Moore*, 405 F.3d at 1213 (affirming the ALJ's RFC determination as supported by substantial evidence despite claimant's citing other record evidence to challenge the ALJ's RFC assessment). Further, Plaintiff argues inferentially that the ALJ failed to take into consideration the breaks Plaintiff will require throughout the workday due to his Crohn's disease. (Dkt. 19 at 11.) Plaintiff offers no support for this argument. This sort of extrapolation is insufficient to warrant a reversal of the ALJ's RFC determination. *Moore*, 405 F.3d at 1213.

### 4. *Plaintiff's Mental Impairments*

Plaintiff also challenges the ALJ's assessment of his mental impairments. Specifically, Plaintiff first argues that the ALJ erred in stating that Plaintiff's reported symptoms of irritability, aggression, nightmares, and flashbacks are not supported by the record. (Dkt. 19 at 11.) Plaintiff points to records reflecting that Plaintiff punched a door and was observed to have mood instability and irritability. (Tr. 437, 564, 1249.) Plaintiff also relies on a September 2011 record wherein Plaintiff was noted as "defensive, guarded." (Tr. 914.)

In her decision, the ALJ found that Plaintiff's symptoms of irritability, aggression, nightmares, and flashbacks on a daily basis, as well as his statements that he has confrontations every time he leaves his home, lack support from the treatment record. (Tr. 22.) The ALJ noted that the treatment record does mention some irritability, but overwhelmingly shows a lack of confrontational behavior. (Tr. 22.) The ALJ also reasoned that the Plaintiff reported feeling "good" and has no history of involuntary hospitalizations or emergency room visits related to

mental impairment.  (Tr. 22, 618, 709, 724, 1013.)  Considering this evidence, the record supports the ALJ's analysis of Plaintiff's alleged irritability, aggression, nightmares, and flashbacks.

Further, upon review of the record, the ALJ's RFC determination regarding Plaintiff's mental impairments is supported by substantial evidence.  The ALJ found that Plaintiff retains the ability to perform light work, with the additional restrictions that he perform work requiring simple instructions and only occasional social interaction.  (Tr. 20–21.)  As explained by the ALJ, Plaintiff generally had normal mental status examinations during which he was noted as fully oriented and cooperative with goal directed thought content, intact memory, concentration, and attention, and good insight and judgment.  (Tr. 22, 24–28, 695, 709, 724, 763, 778, 790, 915, 944, 965, 998, 1075, 1160, 1174, 1180–1181, 1188, 1219–1220, 1222–1223, 1225, 1366.)  Further, Plaintiff's Global Assessment Functioning ("GAF") scores indicated no more than mild or moderate mental limitation.  (Tr. 22–28, 31, 431, 442, 470, 477, 484, 609, 618, 709, 713, 715–716, 723, 754, 915, 945, 950, 957, 965, 969–970, 972, 974, 998, 1073.)  With regard to Plaintiff's daily activities, Plaintiff reported helping at the shelter where he resided, including working in the kitchen and office.  (Tr. 25, 758.)  Thus, Plaintiff's argument that the ALJ erred in assessing Plaintiff's irritability, aggression, nightmares, and flashbacks does not warrant remand as substantial evidence supports the ALJ's decision.  *See Diorio*, 721 F.2d at 728.

Plaintiff next addresses the ALJ's assessment of Plaintiff's PTSD.  Plaintiff first appears to argue that the ALJ erred in not consulting a medical expert regarding the origins of his PTSD and in not taking into consideration Plaintiff's descriptions of his PTSD in psychiatric treatment notes.  (Dkt. 19 at 12.)  However, the ALJ specifically addressed Plaintiff's PTSD throughout her decision, referencing treatment notes as well as Plaintiff's own testimony.  (Tr. 21–22.)  The ALJ included that Plaintiff's treating provider suggested that his "combat story did not meet the

criterion for a PTSD diagnosis." (Tr. 22, 913.) Moreover, Plaintiff offers no arguments concerning how the origins and descriptions of his PTSD pertain to his issues on appeal or how the ALJ may have erred in this regard. As such, Plaintiff's statements are insufficient to raise these issues for appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("[A]n appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it.").

Plaintiff also makes the inferential argument that because the ALJ found that Plaintiff's PTSD is a severe impairment, she was required to accept Plaintiff's assertions regarding his symptoms and experiences as credible. (Dkt. 19 at 12.) However, the assessment of the severity of an impairment at step two of the sequential evaluation process and the assessment of a claimant's credibility are two separate inquires. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), 404.1529, 416.929; *see Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x. 538, 541–42 (11th. Cir. 2016). Thus, Plaintiff's argument lacks merit.

Finally, Plaintiff contends that the ALJ erred in questioning Plaintiff's need for a service dog related to his PTSD. (Dkt. 19 at 12–13.) The ALJ addressed Plaintiff's service dog within her decision and concluded that the record is inconsistent regarding a need for the service dog. (Tr. 23.) Regardless, the ALJ found that the need for a service dog does not result in any functional limitation. (Tr. 23.) Furthermore, during the hearing, the VE affirmed that Plaintiff would be able to perform any of the jobs identified for Plaintiff with the service dog. (Tr. 79.) Plaintiff fails to

demonstrate how the need for a service dog affects his RFC assessment.  Accordingly, Plaintiff's argument does not warrant remand.

### B.    Opinion Evidence

Plaintiff next contends that the ALJ's RFC assessment was erroneous because the ALJ failed to adequately consider all pertinent record evidence.  (Dkt. 19 at 13.)  Specifically, Plaintiff argues that the ALJ did not properly evaluate the opinions of treating therapist Mr. Chad Exceen and state agency consultants Dr. Keith Bauer and Dr. Michael Stevens.  (Dkt. 19 at 13, 19.)

### 1.    Mr. Exceen

Plaintiff argues that the ALJ erred in her evaluation of therapist Mr. Exceen's opinions. (Dkt. 19 at 13.)  Mr. Exceen, Plaintiff's outpatient therapist, examined Plaintiff on January 6, 2014, and completed a medical assessment of Plaintiff's ability to perform work-related activities.  (Tr. 1356–1358.)  Within the assessment, Mr. Exceen completed a checklist concerning Plaintiff's mental impairments and provided notes describing Plaintiff's limitations.  (Tr. 1356–1358.)  For example, Mr. Exceen opined that Plaintiff's ability to follow rules, relate to co-workers, use judgment, and function independently is fair, while his ability to deal with the public, interact with supervisors, deal with work stresses, and maintain attention and concentration is poor.  (Tr. 1356.) In describing these limitations, Mr. Exceen concluded that Plaintiff experiences moderate to severe anxiety and agitation on a daily basis, which makes it difficult for him to maintain simple daily living tasks.  Mr. Exceen further opined that Plaintiff has some difficulty in relating to the general public and will often be involved in verbal confrontations.  (Tr. 1357.)  Without any explanation, Mr. Exceen noted "Post-Traumatic Stress Disorder."  (Tr. 1357.)  Mr. Exceen also found that Plaintiff's ability to understand, remember, and carry out complex or detailed instructions is poor, and his ability to understand, remember, and carry out simple job instructions is fair.  (Tr. 1357.)

Mr. Exceen noted that Plaintiff has difficulty with consistency and in recalling information of daily activities. (Tr. 1357.) With regard to Plaintiff's ability to adjust personally and socially, Mr. Exceen concluded that Plaintiff's ability to maintain his personal appearance and behave in an emotionally stable manner is fair, but his ability to relate predictably in social situations and demonstrate reliability is poor. (Tr. 1357.) Mr. Exceen found that Plaintiff is prone to frequent verbal outbursts, his mood is unpredictable, and he has great difficulty in regulating his emotions. (Tr. 1358.) Lastly, Mr. Exceen concluded that Plaintiff is easily agitated, with increased hyper-vigilance around larger groups of people. Mr. Exceen notes the medical finding to support this assessment as "diagnosed 309.81, PTSD." (Tr. 1358.)

The ALJ considered Mr. Exceen's opinions that Plaintiff has poor or no ability to function in multiple areas including relating socially. (Tr. 31.) The ALJ accorded the opinion little weight because "more qualified sources like physicians identify the claimant as cooperative with good insight and judgment only a month earlier" and because Mr. Exceen's level of treatment with Plaintiff is "unclear, as there does not appear to be 'in-home' treatment notes within the record." (Tr. 31.)

Importantly, the Court notes that therapists are designated as an "other source" of evidence under Social Security Ruling ("SSR") 06-03p, not an "acceptable medical source." Due to this designation, opinions from therapists are not considered medical opinions. SSR 06-03p. As stated in SSR 06-03p:

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. See 20 CFR 404.1513(a) and 416.913(a). Second, only "acceptable medical sources" can give us medical opinions. See 20 CFR 404.1527(a)(2) and 416.927(a)(2). Third, only "acceptable medical sources" can be considered treating

> sources, as defined in 20 CFR 404.1502 and 416.902, whose
> medical opinions may be entitled to controlling weight.

Therefore, the ALJ was not required to specifically assign and explain the weight given to Mr. Exceen's opinion in her decision. *Id*.; 20 C.F.R. 404.1527; *McMahon v. Comm'r Soc. Sec. Admin*., 583 F. App'x 886, 891–92 (11th Cir. 2014).

Although not required to do so, and contrary to Plaintiff's assertion, the ALJ identified good cause for discounting Mr. Exceen's opinion. Specifically, the ALJ's decision is supported by objective medical evidence and Plaintiff's own treatment records. First, the ALJ noted that Plaintiff's physicians found Plaintiff cooperative with good insight and judgment one month prior to Mr. Exceen's opinion. (Tr. 21.) This finding is supported by substantial evidence. In December 2013, Plaintiff was noted to have good insight and judgment and was alert, oriented, and cooperative with no acute distress. (Tr. 1263, 1267, 1272.) Further, as set forth above (*see* discussion *supra* Section A(4)), Plaintiff generally appeared fully oriented and cooperative with goal directed thought content, intact memory, concentration, and attention, and good insight and judgment. (Tr. 22, 24–28, 695, 709, 724, 763, 778, 790, 915, 944, 965, 998, 1075, 1160, 1174, 1180–1181, 1188, 1219–1220, 1222–1223, 1225, 1366.) Second, the ALJ noted that the treatment relationship between Plaintiff and Mr. Exceen is unclear. (Tr. 31.) Indeed, aside from the January 6, 2014, medical assessment, there are no records reflecting Mr. Exceen's treatment of Plaintiff. Accordingly, Plaintiff's assertion regarding the ALJ's analysis of Mr. Exceen's opinion does not warrant reversal.

### 2.    *State Agency Physicians*

Plaintiff next argues that the ALJ erred by according great weight to the opinions of state agency consultants Dr. Keith Bauer and Dr. Michael Stevens. (Dkt. 19 at 19.) Specifically, Plaintiff contends that the ALJ erred in giving greater weight to Dr. Bauer, a non-treating

physician, than to an unnamed treating physician. (Dkt. 28 at 18–19.) Further, Plaintiff argues that Dr. Stevens' opinion that Plaintiff does not have a severe mental impairment is "completely contradictory" to the ALJ's opinion and is not supported by the record evidence. (Dkt. 19 at 19.)

Although ALJs "are not bound by any findings made by State agency medical or psychological consultants," the opinions of state agency consultants "are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i); *Luterman v. Comm'r of Soc. Sec.*, 518 F. App'x 683, 689 (11th Cir. 2013) ("The ALJ also must consider any findings of a state agency medical or psychological consultant, who is considered an expert, and must assign weight and give explanations for assigning weight the same way as with any other medical source."). "The opinions of nonexamining, reviewing physicians . . . when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987).

With regard to Dr. Bauer, Plaintiff states that the opinions of treating physicians are entitled to more weight than non-treating physicians, then makes the conclusory statement that the "ALJ gave greater weight to non-treating sources, including…Dr. Bauer." (Dkt. 19 at 19.) Plaintiff's argument appears to infer that the ALJ erred in assigning greater weight to Dr. Bauer than to a treating physician, but fails to name the treating physician. Without further information, it is impossible for the Court to determine whether Plaintiff's argument is valid. As such, Plaintiff's statements are insufficient to raise this issue for appeal. *See Sapuppo*, 739 F.3d at 681; *Hamilton*, 680 F.3d at 1319.

Plaintiff also argues that the ALJ erred in affording great weight to Dr. Stevens' opinion as it is contradictory to the ALJ's opinion and is not supported by the opinion evidence. (Dkt. 19

at 19.) On September 14, 2010, Dr. Stevens completed a Psychiatric Review Technique Form to assess Plaintiff's mental impairments. (Tr. 844–857.) Dr. Stevens found that Plaintiff has bipolar disorder and a substance addiction disorder reportedly in remission. (Tr. 844–853.) He then rated Plaintiff's functional limitations, finding that Plaintiff has mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 854.) Dr. Stevens further found that Plaintiff has no episodes of decompensation. (Tr. 854.) Dr. Stevens ultimately concluded that Plaintiff does not have a severe impairment for the purposes of determining disability. (Tr. 844.) In his narrative, Dr. Stevens notes that Plaintiff had been working in March 2010 and offered higher pay, but declined the offer because he sought to return to school to obtain his motorcycle mechanics certificate. (Tr. 856.) Dr. Stevens also noted that Plaintiff received GAF scores ranging from 60 to 77, with his latest GAF score rated as 77. (Tr. 856.) Dr. Stevens concluded that based on the objective treatment records, Plaintiff is "stable with bipolar disorder at a high functional level," leading him to find Plaintiff's impairments non-severe. (Tr. 856.)

In her decision, the ALJ considered the opinion of Dr. Stevens. Specifically, the ALJ noted Dr. Stevens' findings and his conclusion that Plaintiff's lack of work is unrelated to mental limitations, given Plaintiff's comments regarding declining higher pay at work to return to school. (Tr. 29.) The ALJ also noted that Dr. Stevens highlighted Plaintiff's GAF scores. The ALJ assigned Dr. Stevens' opinion great weight, reasoning that Dr. Stevens' opinion regarding Plaintiff's lack of a severe impairment is generally consistent with Plaintiff's GAF scores. (Tr. 29.)

Although the ALJ found that Plaintiff had the severe impairments of PTSD, bipolar disorder, and borderline personality traits at step two of the sequential evaluation process, the ALJ

ultimately found Plaintiff not disabled. Therefore, Dr. Stevens' opinion that Plaintiff does not have a severe impairment is not "completely contradictory" to the ALJ's determination. Plaintiff also contends that Dr. Stevens' opinion is not supported by Plaintiff's medical records. (Dkt. 19 at 19.) However, Dr. Stevens relied on Plaintiff's records indicating that he had returned to work and that he received GAF scores ranging from 60 to 77. (Tr. 856.) As described above, (*see supra* Sections A(4)), Plaintiff's GAF scores indicated no more than mild or moderate mental limitation.

Further, "[t]he ALJ arrived at [her] decision after considering the record in its entirety and did not rely solely on the opinion of the state agency physicians." *Ogranaja v. Comm'r of Soc. Sec.*, 186 F. App'x 848, 851 (11th Cir. 2006). The ALJ's decision to accord the opinion of Dr. Stevens great weight is supported by substantial evidence because the opinion is consistent with Plaintiff's GAF scores, daily activities, including helping at the shelter where he resided, and treatment records finding that although Plaintiff had mental difficulties, his mental status was largely normal. Accordingly, "the expert opinions of the non-examining state agency physicians were supported by and consistent with the record as a whole" and, thus, "substantial evidence supports the ALJ's decision to assign great weight to those opinions." *Id.*

### C. The ALJ's Development of the Record and the Appeals Council's Order

Plaintiff argues, in broad terms, that the ALJ failed to fully and fairly develop the record and failed to follow the Appeals Council's order. (Dkt. 19 at 14–18.) First, Plaintiff argues that the ALJ erred in failing to obtain treatment notes from Mr. Exceen's treatment of Plaintiff. (Dkt. 19 at 15.) Second, Plaintiff contends that the ALJ failed to obtain a psychiatric consultative examination to confirm Mr. Exceen's opinion. (Dkt. 19 at 15.) Third, Plaintiff argues that the ALJ failed to obtain outstanding records from Baycare Behavioral Health. (Dkt. 19 at 15.) Fourth, Plaintiff states that the ALJ was required to contact Plaintiff's treating physicians, order a physical

consultative examination, or obtain medical expert testimony regarding Plaintiff's left wrist limitations.  (Dkt. 19 at 15.)  Finally, Plaintiff argues that the ALJ failed to follow the Appeals Council's instruction to update the medical record and obtain additional evidence to complete the administrative record.  (Dkt. 19 at 18.)

### 1.    The ALJ's Development of the Record

Plaintiff's broad contention that the ALJ failed to fully and fairly develop the record does not merit reversal because the transcript of the hearing shows that the ALJ did in fact fully and fairly develop the record.  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record."  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *see* 20 C.F.R. § 416.912(d) ("Before [the Commissioner] make[s] a determination that [claimant is] not disabled, [the Commissioner] will develop [claimant's] complete medical history for at least the 12 months preceding" claimant's application).  However, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim."  *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

When the claimant is not represented at the hearing before the ALJ, which is not the case here, the ALJ's "obligation to develop a full and fair record rises to a special duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts and to be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Graham*, 129 F.3d at 1423 (internal citations omitted).  In cases where the claimant was not represented at the hearing, "there must be a showing of prejudice" before remand is appropriate, which is found if "the record reveals evidentiary gaps which result in unfairness or clear prejudice."  *Id.* (internal citations omitted).  Examples of such prejudice are the ALJ's failure

to obtain records, elicit testimony, or consider all record evidence. *Brown v. Shalala*, 44 F.3d 931, 936 (11th Cir. 1995); *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (finding that prejudice "at least requires a showing that the ALJ did not have all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in the record in reaching his decision.").

Here, Plaintiff was represented by counsel at the hearing before the ALJ. Thus, although the ALJ had a duty to develop the record, it was not the heighted duty required of an ALJ when the claimant is unrepresented. *Graham*, 129 F.3d at 1422. With regard to Plaintiff's argument that the ALJ erred in failing to obtain Mr. Exceen's treatment notes and outstanding records from Baycare Behavioral Health, Plaintiff fails to make the required showing of prejudice. Plaintiff makes no argument concerning how Mr. Exceen's treatment notes or the Baycare Behavioral Health records would further inform the ALJ regarding Plaintiff's impairments, nor does Plaintiff state how the lack of these records resulted in unfairness. Further, there is no evidence that Mr. Exceen has any notes from his treatment of Plaintiff other than those currently in the record. Moreover, Plaintiff cannot show prejudice requiring remand because the ALJ addressed Plaintiff's mental health at length, including his treatment with the VA and the reports from two state agency psychological consultants. (Tr. 19–30.) To the extent that Plaintiff contends that the ALJ should have obtained additional records, the burden is on Plaintiff to prove he is disabled. *Ellison*, 355 F.3d at 1276. Therefore, Plaintiff's argument does not warrant reversal.

Plaintiff also contends that the ALJ failed to obtain a psychiatric consultative examination to confirm Mr. Exceen's opinion and that the ALJ was required to order a physical consultative examination regarding Plaintiff's left wrist limitations. (Dkt. 19 at 15.) However, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for

the administrative law judge to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin*., 496 F.3d 1253, 1269 (11th Cir. 2007). The regulations "may require" a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. 20 C.F.R. § 404.1519a(b). Here, as discussed above, the ALJ's findings regarding Plaintiff's mental impairments and left wrist impairments were based on ample record evidence. Thus, the ALJ was not required to obtain a consultative examination for Plaintiff.

Plaintiff further states that the ALJ should have re-contacted Plaintiff's treating physician or obtained medical expert testimony regarding his left wrist limitations. However, the Social Security regulations state that re-contacting a treating physician may only be required if there is insufficient evidence to determine whether a claimant is disabled or if the ALJ cannot reach a conclusion about whether the claimant is disabled. 20 C.F.R. § 404.1520b(c)(1). In light of the substantial evidence in the record, the ALJ had the necessary information to determine Plaintiff's alleged disability and RFC regarding his left wrist. Further, as stated by the Eleventh Circuit, "the task of determining a claimant's residual functional capacity and ability to work is within the province of the ALJ, not of doctors." *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Moreover, Plaintiff has not shown that he suffered prejudice as a result of any failure of the ALJ to perform further fact-finding. *Id*. There is no evidence that the ALJ's decision would have changed in light of any additional information, and Plaintiff offers no explanation or reasoning as to why the record is insufficient with regard to Plaintiff's left wrist impairment. Consequently, the ALJ did not err by failing to re-contact treating physicians or obtain medical expert testimony.

Plaintiff also argues that the ALJ failed to follow the Appeals Council's November 29, 2013, order.  Specifically, Plaintiff contends that the ALJ failed to comply with the Appeals Council's instruction to update the medical record and obtain additional evidence in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medial evidence.  (Dkt. 19 at 18.)  Plaintiff states that the ALJ did not order a consultative examination, nor did she obtain any records or treatment notes.  (Dkt. 19 at 18–19.)  However, as addressed above, the ALJ complied with the Social Security regulations regarding consultative examinations and developing the record.  Moreover, the ALJ obtained six additional exhibits of medical evidence between the ALJ's April 25, 2012, decision and the decision at issue.  (Tr. 38–30, 112–113.)  Thus, Plaintiff's contention does not warrant reversal.

**D.    The ALJ's Reliance on the VE's Testimony**

Last, Plaintiff argues that the ALJ improperly relied on the testimony of the VE after posing a hypothetical question that did not adequately reflect Plaintiff's limitations.  Specifically, Plaintiff argues that the ALJ erred by relying on the VE's testimony because the ALJ failed to include Plaintiff's limitations regarding his knee brace, left wrist, Crohn's disease, and the need for a service dog.  (Dkt. 19 at 20.)  In sum, Plaintiff contends that the ALJ erred in not including the limitations he argues should have been included within his RFC (*see* discussion *supra* Section A).

However, as determined above, Plaintiff has failed to establish that the ALJ erred in her RFC assessment.  Therefore, the ALJ was not required to include any further limitations in the hypothetical to the VE.  *See Freeman v. Comm'r, Soc. Sec. Admin.*, 593 F. App'x 911, 916 (11th Cir. 2014) (affirming the ALJ's decision because "the hypotheticals posed by the ALJ were

consistent with the RFC determination and adequately considered all of [the claimant's] credible limitations"); *Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) ("[T]he ALJ [is] not required to include findings in the hypothetical that the ALJ . . . properly reject[s] as unsupported."); *Wilson*, 284 F.3d at 1227 (providing that the VE's testimony constitutes substantial evidence when the ALJ poses a hypothetical question that comprises all of the claimant's impairments). Therefore, Plaintiff's final contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**

2. The Clerk of Court is directed to enter final judgment in favor of the Commissioner and close the case.

**DONE** and **ORDERED** in Tampa, Florida, on June 13, 2017.

JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record